# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMANUEL L. BOONE,<br><br>             Plaintiff,<br><br>   v.<br><br>ADVENTIST HEALTH, et al.,<br><br>             Defendants. | Case No. 1:23-cv-173-KES-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS<br><br>(ECF No. 21)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Emanuel L. Boone ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983. The Court screened Plaintiff's complaint, and Plaintiff was granted leave to amend. Plaintiff's first amended complaint is currently before the Court for screening. (ECF No. 21.)

**I.      Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

1

1  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as
2  true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*,
3  572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

4      To survive screening, Plaintiff's claims must be facially plausible, which requires
5  sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable
6  for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret
7  Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully
8  is not sufficient, and mere consistency with liability falls short of satisfying the plausibility
9  standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

10 **II.    Plaintiff's Allegations**

11     Plaintiff is currently housed at California Medical Facility in Vacaville, California. The
12 events in the complaint are alleged to have occurred in California State Prison in Corcoran,
13 California ("Corcoran"). Plaintiff names as Defendants: (1) Adventist Health Bakersfield
14 ("Adventist"), (2) California State Prison – Corcoran, (3) John Richard Garcia, Doctor at
15 Adventist, (4) Rhonda Diem Hong, Doctor at Adventist, (5) Dario, Doctor at Adventist, (6) Robin
16 McConnell, Physician Assistant at Corcoran, (7) S. Uriarte, Psychiatric Technician at Corcoran,
17 (8) Ramen, Doctor of Infectious Disease at Adventist.

18     Plaintiff alleges violation of the Eighth Amendment for deliberate indifference to medical
19 care and is a *Coleman*/ADA member with right to medical care. Plaintiff was seen by multiple
20 doctors during his ordeal; mainly Dr. Garcia, Dr. Rhonda, Dr. Dario and Dr. Ramen who are
21 employed by Adventist Health, in Bakersfield, which holds a contractual agreement with CDCR
22 and the state of California and maintains a jail ward. They exercised their power made possible
23 by state law, and imposed their power on Plaintiff who the state is responsible for. They are
24 certified by the state of California via the medical board, making them state actors. And PA
25 McConnell and PT Uriarte who both worked for and are contracted to work for the California
26 State Prison in Corcoran.

27     On 2/21/19, Plaintiff was initially rushed to Adventist via ambulatory transport for foreign
28 bodies. On this date, Plaintiff was seen by Dr. Garcia, Dr. Rhonda, and Dr. Dario, who acted

deliberately indifferent when they refused to remove the foreign body. Had they removed the foreign object, it would not have later punctured Plaintiff's bowel leaving Plaintiff in immense pain. The refusal of Dr. Garcia, Dr. Rhonda, and Dr. Dario, to remove the body led to prolonged delay and failure to respond to his serious medical need. Plaintiff gradually got worse. They admitted Plaintiff to Adventist on multiple occasions and discharged him. Each time Plaintiff was seen by Dr. Garcia, Dr. Rhonda, and Dr. Dario. On July 5, 2019, Plaintiff was seen and discharged despite his complaints of pain and stomach discomfort. Plaintiff was admitted again on 10/23/19 and seen by Dr. Garcia, Dr. Rhonda, and Dr. Dario and discharged. Plaintiff's condition was so bad at this point that he could not walk and was confined to a wheelchair. Plaintiff was admitted on 10/25/19 with an appendicitis and an abscess in his stomach, due to the doctors' refusal to treat Plaintiff. Plaintiff was discharged again. On 11/18/19, Plaintiff was rushed back to Adventist. Plaintiff was admitted then discharged with the hydronephrosis. Plaintiff was in debilitating pain and was discharged back to prison. Plaintiff's condition was so dire that they deemed it appropriate to send Plaintiff to a tertiary hospital in Fresno, where they immediately tended to Plaintiff's medical situation. It alleviated the pain and performed a four hour surgery where they removed some of Plaintiff's intestines due to being necrotized and Plaintiff needed internal sutures and 26 external staples. Plaintiff still has abdominal pain. Drs Rhonda, Garcia, and Darios refused to treat Plaintiff because of their bias against Plaintiff and his mental health status. They knew that the refusal to treat Plaintiff in a timely manner would leave Plaintiff in pain and disable Plaintiff. Plaintiff uses the restroom and it hurts due to Adventist and their failure to treat Plaintiff.

On the stay of 10/23/19 at Adventist, Plaintiff was seen by Dr. Ramen who told Plaintiff that he was sending Plaintiff back to the prison so Plaintiff could die. Refusing to treat Plaintiff as well as sexually harassing Plaintiff's nurse who reported what he said to Plaintiff and to her to Adventist and refused to act. This prompted Plaintiff's discharged to prevent further investigation leaving Plaintiff in immense and agonizing pain.

While housed at Cororan and going to and from Adventist, Plaintiff was seen by PA Robin McConnell on multiple occasions from 7/5/19 to 12/12/19. She deviated from policy

3

1 tampering with Plaintiff's prescribed medication by prescribing things for Plaintiff that did not
2 work in spite of Plaintiff's condition, going against doctor's orders of prescribed pain
3 management medication that works.  She knew of Plaintiff's condition , i.e., perforated bowel,
4 abscess, and in spite of this, PA Robin McConnell acted deliberately indifference and failed to act
5 when Plaintiff told her Plaintiff needed medical treatment and refused Plaintiff access to a
6 wheelchair and made Plaintiff practically crawl back to Plaintiff's unit in hand cuffs in spite of
7 Plaintiff's protests of pain and his condition.  She refused adequate pain medication and went
8 against doctor's initial orders and failed to act when Plaintiff told her Plaintiff needs medical
9 treatment and by interfering with qualified personnel/hospital. She knew Plaintiff had a
10 debilitating condition and refused Plaintiff a wheelchair and refused reasonable measures for
11 Plaintiff's pain.
12     While in solitary confinement, psychiatric technician S. Uriarte on 11/21/19, refused to
13 give Plaintiff the doctor's prescribed pain medication at 8:00 p.m. pill call.  Plaintiff informed her
14 that Plaintiff was in immense pain and needed to be seen by a doctor, she said no.  Refusing
15 Plaintiff access to a qualified personnel or hospital.  Plaintiff did not get any medical attention
16 until the next day, 12-13 hours later.  Plaintiff thought he was going to die.  She refused Plaintiff
17 even though she knew that Plaintiff was in pain.  The next day Plaintiff was rushed to the hospital
18 for surgery for four hours and where Plaintiff received 26 stitches.
19     Their course of treatment was medical and ethically unacceptable and they chose this
20 course anyway in conscious disregard for excessive risk to Plaintiff's physical and mental health.
21 The defendants were medical providers and they were not going to help Plaintiff and if he did not
22 get help from them he was not going to get help.  Drs. Rhonda, Dario, Garcia and Ramen acted in
23 concert as his medical team and Adventist Health. They knew that their failure to treat Plaintiff
24 would lead to significant injury and possibly death, including excruciating pain. PA McConnell
25 and PT Uriarte left Plaintiff in dire pain, knowing that their course of action was medically
26 unacceptable.
27     Plaintiff seeks compensatory damages and to have the people involved fired or
28 reprimanded.

4

**III.    Discussion**

   **Eleventh Amendment**

To the extend Plaintiff is claiming money damages against California State Prison for an Eighth Amendment claim, "[t]he Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Indeed, the Eleventh Amendment prohibits federal courts from hearing a Section 1983 lawsuit in which damages or injunctive relief is sought against a state, its agencies (such as CDCR) or individual prisons, absent "a waiver by the state or a valid congressional override. . . ." *Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, 'an arm of the state,' its instrumentalities, or its agencies." *See Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 957 n.28 (9th Cir. 2002) (internal quotation and citations omitted), cert. denied, 538 U.S. 961 (2003). "The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court. . . ." *Dittman*, 191 F.3d at 1025–26 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)); *see also Brown v. Cal. Dep't. of Corrs.*, 554 F.3d 747, 752 (9th Cir. 2009) (finding California Department of Corrections and California Board of Prison Terms entitled to Eleventh Amendment immunity).

   **State Actor**

Plaintiff names Adventist Hospital and medical personnel from Adventist Hospital as defendants.

The term "person[s]" in § 1983 encompasses state and local officials sued in their individual capacities, private individuals, and entities which act under the color of state law— including local governmental entities. *See Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826, 835 (9th Cir. 1999) (party charged with constitutional deprivation must be a governmental actor because "§ 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrong"). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state

1 law and made possible only because the wrongdoer is clothed with the authority of state law."
2 *West v. Atkins*, 487 U.S. 42, 49 (1988).

3     Adventist is a private entity and does not act as a state actor. *Park v. Kitt*, No. 1:19-CV-
4 01551 AWI HBK PC, 2021 WL 1210364, at *6 (E.D. Cal. Mar. 31, 2021).

5     Plaintiff cannot assert a § 1983 claim against the private individual Defendants Dr. Garcia,
6 Dr. Rhonda, Dr. Dario, and Dr. Ramen and Adventist unless he can plausibly allege that each
7 defendant was acting under color of state law.

8     Plaintiff bears the burden of establishing that defendant is a state actor, and there is a
9 presumption that private individuals and entities do not act under the "color of state law" within
10 the meaning of § 1983. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th
11 Cir. 2011). When a private actor's conduct is challenged as "state action" under § 1983, a court
12 looks to two requirements that the private actor must meet: (1) the state policy requirement; and
13 (2) the state actor requirement. *Wright v. Serv. Emps. Int'l Union Loc.* 503, 48 F.4th 1112, 1121
14 (9th Cir. 2022). Under the first requirement, the question is whether the claimed constitutional
15 deprivation resulted from the exercise of some right or privilege created by the state or by a rule
16 of conduct imposed by the state or by a person for whom the state is responsible. *Id.* at 1121-22.
17 Under the second requirement, courts generally use one of four tests outlined by the Supreme
18 Court to examine whether the party charged with the deprivation could be described in all fairness
19 as a "state actor." *Id.* at 1122. The Supreme Court and the Ninth Circuit have recognized at least
20 four tests that facilitate identification of state action. Namely, "(1) public function; (2) joint
21 action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Rawson v.*
22 *Recovery Innovations*, 975 F.3d 742, 747 (2020) (quoting *Kirtley v. Rainey*, 326 F.3d 1088, 1092
23 (9th Cir. 2003)); *see Pasadena Republican Club v. W. Justice Ctr.*, 985 F.3d 1161, 1167 (9th Cir.
24 2021). Satisfaction of any of the tests is enough to find state action, provided no "countervailing"
25 factor defeats a finding of state action. *Pasadena Republican Club*, 985 F.3d at 1167; *Rawson*,
26 975 F.3d at 747. Regardless of the test, the question is simply always whether a defendant has
27 exercised power possessed and made possible because state law. *Pasadena Republican Club*, 985
28 F.3d at 1167.

Relevantly, physicians who contract with prisons to provide healthcare to inmates are state actors. *See, e.g.*, *West*, 487 U.S. at 51–54; *George v. Sonoma Cty. Sheriff's Dep't*, 732 F. Supp. 2d 922, 934 (N.D. Cal. 2010). However, private doctors, nurses, and hospitals who have not assumed the State's obligation to provide medical care to inmates, are not state actors just because they provide one-off medical treatment to an inmate. *See, e.g.*, *West*, 487 U.S. at 51–54; *Calloway v. Youssee*, No. 1:21-CV-01450 JLT BAM(PC), 2022 WL 1409838, at *7 (E.D. Cal. May 4, 2022), report and recommendation adopted, No. 1:21-CV-01450 JLT BAM(PC), 2022 WL 2193458 (E.D. Cal. June 17, 2022), as clarified on denial of reconsideration, No. 1:21-CV-01450 JLT BAM(PC), 2022 WL 2873090 (E.D. Cal. July 21, 2022); *Felix v. Casey*, No. 2:18-cv-3185-KJM-AC-P, 2021 WL 2209828, at *2 (E.D. Cal. June 1, 2021); *Probst v. Adams Cty. Sheriff's Dep't*, No. 1:20-cv-00032-DCN, 2021 WL 1554064, at *3 (D. Idaho Apr. 19, 2021).

Liberally construing the allegations in the first amended complaint, Plaintiff alleges that Dr. Garcia, Dr. Rhonda, Dr. Dario, and Dr. Ramen are state actors.

**Americans With Disabilities Act**

The Americans with Disabilities Act provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2). The Supreme Court has held that "public entity" includes state prisons. *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citation omitted).  To state a claim under the ADA, the plaintiff must have been "improperly excluded from participation in, and denied the benefit of, a prison service, program, or activity on the basis of his physical handicap." *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997). In addition, "[t]o recover monetary damages under Title II of the ADA ... a plaintiff must prove intentional discrimination on the part of the defendant," and the standard for

7

intentional discrimination is at least deliberate indifference. *Duvall v. County of Kitsap,* 260 F.3d 1124, 1138 (9th Cir. 2001).

Plaintiff does not state a viable claim under the ADA.  He alleges that he did not get a wheelchair, but he does not allege facts that show he was excluded from participation in, or denied the benefits of, any service or programs offered by the prison because of his disability, or that he was subjected to any type of discrimination by reason of his disability.  Further, any allegations of inadequate medical care do not state a claim under the ADA.  *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice.").

**Eighth Amendment – Medical Care**

A prisoner's claim of inadequate medical care constitutes cruel and unusual punishment in violation of the Eighth Amendment where the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "Deliberate indifference is a high legal standard," *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096.  In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06).  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, *Peralta v. Dillard*, 744 F.3d 1076, 1082–83 (9th Cir. 2014); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." *Snow*, 681 F.3d at 988 (citing *Jackson*, 90 F.3d at 332) (internal quotation marks omitted).

### Drs. Rhonda, Cario, Garcia and Ramen

Liberally construing the allegations in the complaint, including that Drs. Rhonda, Dario, Garcia, and Ramen are state actors, Plaintiff states a claim for medical deliberate indifference against each of these defendants.

### Defendant McConnell

Plaintiff's complaint fails to state a claim for medical deliberate indifference. Plaintiff fails to allege what medical care Defendant McConnell provided. With regard to pain medication given to Plaintiff, it appears from the allegations that Defendant McConnell gave Plaintiff medication, but not the medication Plaintiff wanted or was prescribed. A difference of opinion between a medical provider and Plaintiff does not amount to deliberate indifference. Plaintiff's conclusory allegations are insufficient.

### Defendant Uriarte

Similarly, Plaintiff alleged Defendant Uriarte did not provide Plaintiff medication as Plaintiff wanted or the wheelchair he requested. Plaintiff fails to allege what care Uriarte provided, because a mere difference of opinion between a medical provider and Plaintiff does not amount to deliberate indifference. Plaintiff's conclusory allegations are insufficient.

**Injunctive Relief**

Plaintiff seeks to have the defendants fired or reprimanded. The Court construes these

1  allegations as requests for injunctive relief.  Requests for prospective relief are further limited by
2  18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ["PLRA"], which requires that the
3  Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the
4  violation of the Federal right, and is the least intrusive means necessary to correct the violation of
5  the Federal right."  In cases brought by prisoners involving conditions of confinement, any
6  injunction "must be narrowly drawn, extend no further than necessary to correct the harm the
7  court finds requires preliminary relief, and be the least intrusive means necessary to correct the
8  harm."  18 U.S.C. § 3626(a)(2).  Moreover, where, as here, "a plaintiff seeks a mandatory
9  preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should
10 be extremely cautious' about issuing a preliminary injunction and should not grant such relief
11 unless the facts and law clearly favor the plaintiff." *Committee of Central American Refugees v.*
12 *I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986), quoting *Martin v. International Olympic Committee*,
13 740 F.2d 670, 675 (9th Cir. 1984).  Plaintiff does not have the right in a Section 1983 action to
14 have defendants fired or reprimanded.

**IV.     Conclusion and Recommendation**

Based on the above, the Court finds that Plaintiff's first amended complaint states a cognizable claim against Dr. Rhonda Diem Hong, Dr. Dario, Dr. John Richard Garcia, and Dr. Ramen, as alleged state actors, for medical deliberate indifference for denial of medical care in violation of the Eighth Amendment.  However, Plaintiff's complaint fails to state any other cognizable claims for relief against any other defendants.  Despite being provided with the relevant pleading and legal standards, Plaintiff has been unable to cure the deficiencies in the first amended complaint. Further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, it is HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's first amended complaint, filed November 21, 2025, (ECF No. 21), against Dr. Rhonda Diem Hong, Dr. Dario, Dr. John Richard Garcia, and Dr. Ramen, as alleged state actors, for medical deliberate indifference for denial of medical care in violation of the Eighth Amendment; and

2. All other claims and defendants be dismissed based on Plaintiff's failure to state claims upon which relief may be granted.

\* \* \*

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **Objections, if any, shall not exceed fifteen (15) pages or include exhibits.  Exhibits may be referenced by document and page number if already in the record before the Court.  Any pages filed in excess of the 15-page limit may not be considered.**  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 25, 2025**            /s/ *Barbara A. McAuliffe*            _
                                                                    UNITED STATES MAGISTRATE JUDGE

11